Russell D. Yerger
YERGER LAW FIRM, P.C.
2722 3rd Avenue North, Suite 400
Billings, Montana 59101
Telephone: (406) 256-1500
Facsimile: (406) 256-1511
ryerger@180com.net

Jon M. Moyers
MOYERS LAW P.C.
490 North 31st Street, Suite 101
Billings, Montana 59101
Telephone: (406) 655-4900
Facsimile: (406) 655-4905
jon@jmoyerslaw.com

    Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| JUSTIN S. HARRIS, | CASE NO. CV_____ |
| Plaintiff, | |
| vs. | COMPLAINT AND DEMAND FOR JURY TRIAL |
| BNSF RAILWAY COMPANY, a Delaware corporation, | |
| Defendant. | |

    COMES NOW Plaintiff Justin S. Harris ("Harris"), and for his Complaint against Defendant BNSF Railway Company ("BNSF"), a Delaware corporation

COMPLAINT AND DEMAND FOR JURY TRIAL - PAGE 1

doing business in Montana states, alleges and avers as follows:

## PARTIES - VENUE - JURISDICTION

1. Plaintiff Harris is, and at all times relevant was, a resident of Billings, Montana.

2. Defendant BNSF is a Delaware corporation doing business as a railroad transportation company throughout the State of Montana; is a person engaged in industry affecting commerce with thousands of employees; and, as such, is a "covered entity" as defined by 42 U.S.C. 12111.

3. Subject matter jurisdiction over federal employment discrimination claims is proper under federal question jurisdiction of 28 U.S.C. § 1331.

4. Subject matter jurisdiction is proper under 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between Plaintiff and Defendant, and the jurisdictional threshold under 28 U.S.C. § 1332(a) of an amount in controversy of $75,000.00 is satisfied.

5. Venue is proper under 28 U.S.C. § 1391 as BNSF is doing business within this judicial district and the most substantial portion of the events giving rise to Harris' employment discrimination claims occurred within this judicial district.

6. Divisional venue is proper pursuant to Local Rule 3.2(b), Local Rules

of Procedure of the United States District Court for the District of Montana, as the Helena Division includes Lewis and Clark County, Montana which would be a county of proper venue for filing an employment discrimination claim against BNSF under the laws of the State of Montana pursuant to the Montana Human Rights Act, § 49-2-303, M.C.A.

7. Prior to filing this action, Harris filed a charge of employment discrimination against BNSF with the Montana Human Rights Commission on February 21, 2013, which was dual filed with the United States Equal Employment Opportunity Commission. A copy of this charge is attached hereto as **Exhibit A** and made a part hereof by reference. The Montana Human Rights Commission investigated the charge and made a reasonable cause finding on August 8, 2013 that illegal disability discrimination occurred as charged by Harris, as appears in its Final Investigative Report, a copy of which is attached hereto as **Exhibit B** and made a part hereof by reference. Harris and BNSF thereafter conducted substantial discovery with an eye towards presenting the merits of the matter to a hearings examiner at a Contested Case Hearing to be conducted under the provisions of § 49-2-505, M.C.A. on June 2, 2014. Prior to that Contested Case Hearing ever occurring, the hearings officer entered an Order on May 30, 2014 dismissing Harris' Charge of Discrimination for lack of subject matter jurisdiction

ruling that Montana law did not apply to Harris' claims. Harris thereafter sought administrative review of this decision by filing his Notice of Appeal of administrative hearing officer's decision to the Montana Human Rights Commission on June 11, 2014. Prior to oral argument on his appeal, the United States Equal Employment Opportunity Commission concluded its processing of Harris' dual filed charge of discrimination, finding reasonable cause to believe that violations of the anti-discrimination laws occurred, and issued Harris a right to sue letter, which was received by Harris on September 22, 2014. A copy of the EEOC right to sue letter is attached hereto as **Exhibit C** and made a part hereof by reference. Oral argument on Harris' appeal before the Montana Human Rights Commission occurred on November 14, 2014 at which time the Montana Human Rights Commission took action affirming the hearing officer's decision dismissing Harris' charge of illegal employment discrimination; its Final Agency Decision reflecting that disposition is dated November 20, 2014.

8. On July 5, 2012, Harris applied electronically from his home in Montana for a BNSF Conductor Trainee position based at BNSF's Minot, North Dakota location. BNSF advertised the position's rate of pay as approximately $68,000.00 annually and indicated that it offered employment benefits for the position that were valued at approximately $22,000.00 annually.

9. After accepting Harris' online application for this position, BNSF required Harris to electronically complete an online assessment, which Harris promptly performed.

10. On July 23, 2012, Harris received two communications from BNSF, both inviting Harris to a "Realistic Job Preview and Testing Session" in Minot, North Dakota on August 1, 2012, in connection with the employment application Harris had submitted. Harris was advised in the invitation dated July 23, 2012 that if he had any questions, he should contact his recruiter.

11. In order to confirm that the position for which he was applying would have seniority rights to work in Montana, Harris sent an email to Joseph Spier, a BNSF hiring official who was taking calls in Harris' recruiter's absence. Harris asked Spier if he would be working in a division that covered parts of North Dakota, Montana and Wyoming. In response, Spier stated, "Nd and Mt-what specifically r u thinking? What is yur location of preference". After receiving this confirmation, Harris decided to attend the event in Minot, North Dakota.

12. On July 31, 2012, Harris, in reliance on Spier's representations, traveled to Minot, North Dakota for the Realistic Job Preview and Testing session on the morning of August 1, 2012. BNSF reimbursed Harris for his travel from Montana, lodging and meal expenses associated with his attendance.

13. Harris satisfactorily completed all aspects of the interview and aptitude testing conducted by BNSF officials in Minot, North Dakota at the Realistic Job Preview and Testing session. He also provided BNSF a hair sample.

14. On August 23, 2012, Harris received a letter of congratulations from BNSF indicating that he had successfully completed the interview process and that BNSF was extending him a conditional offer of employment to join BNSF as a Conductor Trainee in Minot, North Dakota. BNSF told Harris that it believed that he would make an excellent addition to its team.

15. The communications extending the conditional offer of employment required Harris to accept the offer electronically, which he did on August 23, 2012.

16. Harris was thereafter notified by BNSF that he was required to complete a medical questionnaire sent to him by Comprehensive Health Services, Inc., ("CHS") one of BNSF's contractors. Harris promptly completed this questionnaire and submitted it electronically the same day. Harris was also advised on August 23, 2012 of the medical screening that BNSF required.

17. After completing the medical questionnaire, Harris was contacted by CHS and required to appear at various locations in Billings, Montana for various physical and medical tests.

18.     On August 28, 2012, Harris was required to appear at Mountain Land Physical Therapy in Billings, Montana to participate in a physical capacities assessment by Industrial Physical Capabilities Services, Inc., another BNSF contractor. The results of this assessment showed that Harris was able to perform and met the minimum physical demands of the essential functions of a train service employee.

19.     On August 30, 2012, Harris appeared at St. Vincent Healthcare Occupational Health per CHS instructions in Billings, Montana and had his blood pressure, pulse and respiratory rate measured and his height and weight was recorded; his blood pressure was measured at 116/81; his pulse was measured at 73; his respiratory rate was measured at 16; his height was measured at 6'0"; and his weight was measured at 309 pounds. Thereafter, his hearing and vision were tested. Prior to departing, Harris signed an authorization allowing CHS to release his medical information to BNSF.

20.     On September 7, 2012, Harris received an email from the BNSF Railway medical Department indicating that he was not qualified for the safety sensitive conductor trainee position due to significant health and safety risks associated with Class 3 Obesity (Body Mass Index of 40 or greater). At no time prior to receiving the September 7, 2012 email rescinding the conditional offer of

employment was Harris contacted by CHS or BNSF in which they requested additional medical information, additional work history, or additional medical testing, and he was not asked to lose weight. Had BNSF made these requests, Harris would have complied. BNSF also did not ask Harris to comply with any of the requests for information it identified as necessary as part of its direct threat analysis.

21.     Harris has never been diagnosed with or treated for any symptoms associated with sleep apnea; excessive daytime sleepiness; decreased exercise tolerance; osteoarthritis of the knees or ankles; knee or ankle fractures; coronary artery disease; hypertension; heart disease; possible sudden, unexpected incapacitation or impairment; or diabetes. Harris' regular physician has never restricted him from working but instead advised that he was physically qualified to perform the position of a train service conductor.

22.     During the discovery phase of the administrative proceeding set forth above, BNSF Railway made admissions that had Harris been hired and promoted to the position of a regular conductor, he would have been performing train service work for it in its Montana Division, which is supervised by management officials located in Billings, Montana. BNSF also produced a copy of a seniority roster on which Harris' class of job applicants appear with a seniority date of

October 1, 2012; this seniority district is called the Montana Seniority District Number 3 and has seniority rights to work west out of Minot, North Dakota, but not east, and also from the railroad's terminals located in Glendive, Forsyth, and Glasgow, Montana. BNSF also admitted that it had not followed its Policy on Direct Threat.

23. BNSF withdrew the conditional offer of employment it had made to Harris solely on the basis of statistical stereotypes associated with his elevated Body Mass Index of 41.9. No other data or information, other than this metric, was determinative of BNSF's decision to withdraw the conditional offer of employment.

24. In withdrawing its employment offer to Harris, BNSF mistakenly believed that he had a physical impairment that substantially limited the major life activity of working in that it concluded that Harris was disqualified from performing the essential functions of a class of or broad range of jobs. BNSF mistakenly believed that Harris had a physical impairment that limited him from working safety sensitive employment positions, for which a worker is at no risk of sudden and unexpected incapacitation or impairment due to health issues associated with Class 3 (morbid) obesity.

## COUNT I

### (Perceived Disability Discrimination - Violation of 42 U.S.C. §§ 12101 *et. seq.* as Amended by the Americans With Disability Act Amendments of 2008 (hereafter, the "ADAAA"))

25. Plaintiff hereby incorporates by reference paragraphs 1 through 24 and further states:

26. BNSF is a covered entity and employer under 42 U.S.C. § 12111.

27. BNSF discriminated against the Plaintiff in violation of 42 U.S.C. § 12112(a) by revoking its conditional offer of employment to Harris due to its perception that Plaintiff was disabled.

28. At all material times, Harris was capable of performing the job duties with BNSF in a safe and satisfactory manner and without the need of any accommodation.

29. As a direct and proximate result of BNSF's discriminatory conduct, Harris has suffered general and special damages, including past, continuing and future loss of wages and benefits, emotional distress, and mental anguish.

30. As a result of BNSF's discriminatory conduct, Harris has incurred, and will likely continue to incur attorney's fees and costs in this matter, and BNSF should be ordered to pay Harris' reasonable attorney's fees and costs.

31. BNSF's actions described herein were done willfully and intentionally.

32. As a result of BNSF's discrimination, Harris has suffered damages and seeks the following relief:

  (a) Back pay and lost benefits to the time of trial;

(b)   Front pay including retirement and other benefits;

(c)   Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

(d)   Punitive damages for Defendant's malice or reckless indifference to Plaintiff's federally protected rights;

(e)   Attorney's fees, expert witness fees and other reasonable costs; and

(f)   Pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant for all his general, special and punitive damages, for costs, attorney's fees, interest and such other relief as the Court deems just, proper and equitable in the premises.

## JURY DEMAND

Plaintiff requests a trial by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure, on all claims and issues so triable.

/
/
/
/
/
/
/

DATED this 16th day of December, 2014.

        MOYERS LAW P.C.

        By: /s/ Jon M. Moyers

        -and-

        YERGER LAW FIRM, P.C.

        By: /s/ Russell D. Yerger
             Russell D. Yerger
             Attorneys for Plaintiff